HAVERHILL SHOE NOVELTY CO., INC. *vs.* CARMELLA DIVONA.

JULY 30, 1954.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Baker, J. This is an employer's petition brought under the workmen's compensation act, general laws 1938, chapter 300, to review a preliminary agreement which it had

entered into with the respondent, formerly one of its employees, who sustained an injury arising out of and in the course of her employment by petitioner. After a hearing in the superior court a justice thereof granted the prayer of the petition and ordered that payments of compensation to respondent be suspended. From the entry of such decree she duly prosecuted her appeal to this court.

The decree contained the following finding of fact: "That the incapacity of the employee resulting from the injury of February 19, 1951, has ended insofar as that incapacity results from the injury, the nature and location of which are set forth in the preliminary agreement."

In the agreement being reviewed, which was signed May 8, 1951, it is set out that the date of the accident was February 19, 1951; that the cause of the injury was "Operating power press taking piece out of press and stepped on foot pedal and press caught left index finger"; and that the nature and location of the injury was "Left index finger, distal phalanx, severe contusion and extensive loss of tissue from palmar surface." It was provided that compensation be paid for the duration of total incapacity which under the agreement started May 3, 1951. It also appeared that a preliminary agreement of exactly the same import had previously been entered into by the parties on March 9, 1951 and had been terminated by a compensation agreement and settlement receipt stating that respondent had returned to work April 30, 1951.

It appears from the evidence that the accident happened as set out in the preliminary agreement and that the nature and location of respondent's injury was also correctly stated therein. After being treated for a short time by two physicians, about May 10, 1951 she was referred to Dr. Louis A. Sage, an orthopedic specialist, who testified for respondent that he found the accident had caused a traumatic amputation of the tip of her left index finger which was sensitive; that on June 7, 1951 he operated on the tip of the finger

and removed a neuroma therefrom; that she improved for a time but later again suffered pain and further sensitiveness in her finger; and that thereafter on November 20, 1951 he reamputated the finger to just below the distal phalangeal joint and cut short the digital nerves so that they would retract below the tip.

The respondent improved substantially but about the middle of February 1952 there was pain in her finger and in her left arm. Thereafter she became worse and the pain increased extending into her shoulder and her hand at times became cold and moist. However, the motion of the finger was normal at that time and there was no swelling, but the hand was somewhat mottled and there was tenderness near the end of the stump on the palmar surface. The respondent became nervous and was much worried. Doctor Sage recommended that she go to another physician, whom he named, in order to have him inject novocain in the ganglion in the cervical region. The respondent did not wish to take this treatment, and on April 22, 1952 she was discharged by Dr. Sage when she said she wished to go to the Lahey Clinic. He did not see her thereafter.

In a short time she went to the Lahey Clinic in Boston and was sent to the New England Baptist Hospital where in the latter part of May 1952 a doctor amputated her left index finger to a point just distal to the proximal interphalangeal joint. In that hospital about the same time respondent had a sympathectomy which consisted of the removal of a ganglion on her spine, apparently for the purpose of ridding her of pain in her left shoulder, arm and hand. This operation was performed by a different doctor. After her release she went to the clinic occasionally to obtain certain medicines for her nerves and blood.

At the hearing respondent, who was thirty-one years old, was married and had no children, testified in substance that her hand, arm and back were painful; that she performed her household duties with difficulty; that she was

left-handed; that she could not hold things in that hand but dropped them; and that she did not feel able to do any work, especially with her left hand which becomes very cold. She was then receiving no treatment for her finger.

Doctor Herbert E. Harris, who testified for petitioner, examined respondent twice on behalf of its insurance carrier, the first time on May 15, 1952 just prior to respondent's going to the Lahey Clinic, and the second time on October 27, 1952, several months after she had returned therefrom. Based on the latter examination Dr. Harris testified positively that, so far as her injured finger was concerned, in his opinion respondent could return to and do her former work as a press operator. He stated that her left index finger showed a well-healed scar; that the color of the finger was normal; that there was no tenderness to pressure at any point about the end or side of the phalanx; and that she had 90 degrees of flexion of the phalangeal joint. No doctor who had treated respondent in Boston was called as a witness and no deposition of any was submitted. A vice-president of the petitioner testified that respondent's job as a press operator was open to her if she wished and that she could earn at least the same weekly pay which she received when she was injured.

It is clear that there was substantially uncontradicted legal evidence presented by Dr. Harris which supported the finding of fact of the trial justice contained in the decree appealed from, namely, that respondent's incapacity had ended in so far as it resulted from the injury, the nature and location of which were set out in the preliminary agreement being reviewed. In such circumstances it is settled by statute and decision that such a finding is conclusive in the absence of fraud. G. L. 1938, chap. 300, art. III, §6. The petitioner's contention is that this is determinative of the case.

As a matter of fact respondent does not seriously attack the above finding. Generally speaking her defense is based

on the proposition that the trial justice erred in not permitting her to show that following the sympathectomy she suffered pain and disability in her back, shoulder and arm to the extent of allegedly rendering her incapable of working, but that he limited her to evidence relating to the condition of her left index finger. She contends that such physical difficulties and incapacity as she now has are the direct result of the original injury to her finger.

An examination of the transcript shows that the trial justice was reasonably liberal in permitting the examination of witnesses, but that he drew the line on questions which apparently did not relate to the injury to respondent's finger. Also it is clear that the trial justice ruled correctly in excluding certain excerpts from the records of the Lahey Clinic and the New England Baptist Hospital relating to respondent's treatment in those places. Such excerpts were not properly identified when offered and moreover in the circumstances petitioner was entitled to the benefit of seeing the entire record.

In making his rulings and in deciding the case the trial justice, after carefully reviewing and considering related cases, relied upon the principle of law laid down in the case of *Peters* v. *Monowatt Electric Corp.*, 78 R. I. 134. There it was held that under a petition for review a trial justice did not have authority to find the injured person entitled to compensation for an injury not mentioned in the agreement as having resulted from the accident, nor was he authorized to award compensation on a finding of a new and different injury from the one which was the specific incapacitating injury agreed to by the parties in their preliminary agreement. That rule of law has been fully recognized and followed by this court in several cases. Its application must of necessity depend in large measure upon the facts appearing in the record of each individual case when the question of applicability is raised.

In our opinion cases such as *Wareham* v. *United States*

*Rubber Co.*, 73 R. I. 207, and *Stillwater Worsted Mills, Inc.* v. *Mehegan*, 80 R. I. 449, 98 A.2d 267, are clearly distinguishable from the instant case. In those cases it is recognized that a single original physical injury set out in a preliminary agreement may have psychical effects of an incapacitating nature and thus be compensable. However, in the present case no contention is made by respondent or is supported by evidence that her original injury has had any psychical effects. Also the case of *Macedo* v. *Atlantic Rayon Corp.*, 81 R. I. 339, 341, 103 A.2d 64, 66, does not aid respondent. There the court stated: "Where the nature of a particular injury is described in the agreement, the court on a petition to review may consider any incapacity arising out of and flowing from the original injury, if the causal connection thereof is established. * * * But it may not consider on such a review any incapacity caused by a new, separate and different injury."

Upon consideration it is our judgment that the rulings of the trial justice are not erroneous in the circumstances and that there is evidence in the record to support a finding that the injury to respondent's left index finger as described in the preliminary agreement was corrected either by the further amputation of the finger or the sympathectomy or both.

As pointed out in *Peters* v. *Monowatt Electric Corp.*, *supra*, it must be shown that respondent's present incapacity is not a new, separate and different injury but is one arising out of and flowing from the injury described in the agreement. Here there is no medical or other evidence showing with reasonable definiteness such causal connection.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission for further proceedings.

ON MOTION FOR REARGUMENT.

OCTOBER 14, 1954.

PER CURIAM. After our decision in the above case the respondent asked and received permission to file a motion for reargument. Pursuant to this permission she has filed such a motion, setting out therein certain reasons on which she bases her contention that justice requires a reargument of the case. We have carefully considered those reasons and we are of the opinion that they are without merit.

Motion denied.

*Francis V. Reynolds, Richard P. McMahon,* for petitioner.

*Frank C. Cambio,* for respondent.